**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| Central Transport, LLC, | : | Case No. 3:15-cv-265 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| Balram Trucking, Ltd., | : | |
| Defendant. | : | |

_____

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DOC. 13)**
_____

This case is before the Court on the Motion for Summary Judgment (Doc. 13) filed by Defendant Balram Trucking, Ltd. ("Balram").  On April 26, 2016, Plaintiff Central Transport, LLC ("Central Transport") filed an Opposition to the Motion for Summary Judgment, in which it also moved, in the alternative, for time to conduct additional discovery under Fed. R. Civ. P. 56(d). (Doc. 14)   On May 5, 2016, Balram filed a Reply (Doc. 15) to Central Transport's Opposition. The Motion for Summary Judgment is therefore fully briefed and ripe for the Court's review.   For the reasons discussed below, the Court **DENIES** the Motion for Summary Judgment.  Central Transport's motion for time to conduct additional discovery is **DENIED** as moot.

**I.     BACKGROUND**

This case arises out of a traffic accident on I-75 involving a tractor trailer owned by Balram and another tractor trailer owned by Central Transport.  The parties do not dispute the facts surrounding the accident.  On August 28, 2013, traffic was stopped in the southbound lane of I-75 near Tipp City, Ohio.  (Doc. 13 at 2; Doc. 14 at 3-4.)   Dial Jhutti, while driving a tractor trailer in the course and scope of his employment for Balram, failed to break and rear ended a car

being driven by Loretta Stotler.  (*Id.*)  Ms. Stotler's vehicle was pushed into a concrete median. (*Id.*)  Mr. Jhutti's tractor trailer then struck a tractor trailer driven by Michael Moore, a driver for Central Transport.  (*Id.*)  Central Transport's tractor trailer was forced to collide with a number of other vehicles, creating a chain of collisions.  (*Id.*)  Both tractor trailers caught fire, killing the drivers.  (*Id.*)  The parties do not dispute Balram's liability for the accident.

After the accident, Balram received a total of eight claims from (1) various vehicle owners, including Central Transport, for property damage, (2) the Ohio Department of Transportation ("ODOT") for damage to the roadway, and (3) the Estate of Mr. Moore for wrongful death. (Doc. 13 at 2.)  Balram's counsel, Jurca & Lashuk, LLC, invited all of the claimants to a global mediation to attempt to resolve their claims within the insurance policy limits available to Balram.  (Doc. 13-1 at 3-4.)  On February 20, 2015, Balram's counsel held the mediation at their Columbus, Ohio office.  (Doc. 13 at 3.)  (*Id*.)  The claimants present were the representative for Mr. Moore's estate and his counsel; Torsten Langutth, a vehicle owner; Christine Kurilic, counsel for ODOT; and Andrea Bouchard, counsel for Central Transport.  (*Id*.; Doc. 14 at 4.)  Balram's insurance provider, Great West Carriers, also attended the mediation through its representative, Michael Bissey.  (Doc. 13 at 4.)

The mediation resulted a settlement agreement that reads as follows:

February 20, 2015                    Moore, et al v. Balram, et al

The following plaintiffs met in Columbus, OH on 2-20-15 and agreed to settlements as follows, in U.S. dollars, where the conversation rate was .792824.

1.    ODOT - $30,000 U.S.

2.    Central Transport - $29,860 U.S. – Conditional upon receipt of audited financials confirmed  by  affidavit from Balram's CEO

3.    Estate of Moore - $1,485,000 – U.S.

   4.  Torsten Langguth - $5,000 U.S.

As the exchange rate fluctuates, the parties have agreed that at the point in time when Balram's carrier is to cut checks, Balram's carrier will contact the undersigned mediator with the then current exchange rate, the mediator will multiply the sums listed above by the then current exchange rate, and will then inform the above listed parties what sums are available to resolve their claims at that time, after which, each party will advise the mediator whether the newly computed sums are sufficient to resolve their claims.

Balram's carrier will utilize its best efforts to insure that the aforementioned conversations with the mediator locking in the exchange rate will take place on or before March 2, 2015.

  /s/ Andrea Bouchard
for Central Transport

  /s/ Christine L. Kurilic
for ODOT

  /s/ Torsten Langguth
Torsten Langguth

  /s/ Michael Michmerhuizen
for Estate of Moore

  /s/ Michael Bissey
for Great West Carriers

(Doc. 13-1 at 5-6 (hereinafter, the "Settlement Agreement").) All of the parties present at the mediation signed the Settlement Agreement. No attorney retained by Balram or individual employed by Balram signed the agreement. Central Transport and Balram dispute who was party to the Settlement Agreement, as well as the meaning of its terms.

On May 9, 2015, Balram's counsel sent a settlement check and proposed release to Central Transport. (Doc. 14 at 4.) Central Transport refused to sign the release on the grounds that Balram had failed to produce audited financials as required under the Settlement Agreement. (*Id.*) On February 11, 2016, Balram produced audited financial records and an affidavit from

3

Balram's owner, Balram Kumar Koshal. (*Id.* at 6.) Central Transport maintains, however, that the financial information provided is incomplete. (*Id.*)

On July 6, 2015, Central Transport brought this action against Balram in the Court of Common Pleas for Miami County, Ohio. (Doc. 1 at 1.) On August 4, 2015, Balram removed the case to this Court based on its diversity jurisdiction under 18 U.S.C. §§ 1332 and 1441. (*Id.*) On April 5, 2016, Central Transport filed an Amended Complaint asserting three claims: Respondeat Superior, Breach of Contract, and Contractual Reformation. (Doc. 11.) On April 13, 2016, Balram filed the Motion for Summary Judgment, which is now before the Court. (Doc. 13.)

In its Motion for Summary Judgment, Balram argues that all of Central Transport's claims against Balram were resolved at the February 20, 2015 mediation pursuant to the Settlement Agreement. (Doc. 13 at 7.) Balram contends that the Settlement Agreement's terms are clear and unambiguous. Balram argues that it has fulfilled its only obligation under the Settlement Agreement—to provide audited financials—and therefore Central Transport does not have any claim as a matter of law.

Central Transport argues that the Settlement Agreement resolves only its claims against Balram's insurance policy, not its claims against Balram. In support, Central Transport notes that no officer, agent or representative of Balram signed the Settlement Agreement, and contends that Central Transport required Balram to provide audited financials for the very purpose of pursuing damages directly from Balram. (Doc. 14 at 7.) Central Transports asserts that it suffered damages in excess of $110,000 as a result of the accident, far more than the $29,860 that it agreed to accept from Balram's insurance carrier at the mediation. It stands to reason, according to

4

Central Transport, that it would not have agreed to resolve all of its claims for such a relatively small amount at the mediation.

## II. ANALYSIS

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (quoting *Anderson*, 477 U.S. at 250).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go

5

beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affirmations are more credible. 10A *Wright & Miller, Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id*. However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id*.

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091 (1990). Thus, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

### B. <u>Balram's Motion for Summary Judgment</u>

Balram's Motion for Summary Judgment is based on the premise that the Settlement Agreement's terms are clear and unambiguous. (Doc. 13 at 7-8.) As there are genuine issues of

6

material fact concerning the meaning of those terms, the Court must deny the Motion for Summary Judgment.

A settlement agreement is a type of contract. Under Ohio law, "courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St. 3d 635, 638 (1992). "When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Id.* The threshold issue in interpreting a contract, therefore, is determining whether or not its terms are clear and unambiguous. *Id.*

Balram argues that all of Central Transport's claims against it were resolved in the Settlement Agreement. However, looking to the "four corners" of the Settlement Agreement, there is no indication that Balram was a party to the contract, much less that all of the claims against it were resolved. *Antonucci v. Ohio Dep't of Taxation*, 2010-Ohio-3326, ¶ 8 ("When parties to a contract dispute the meaning of the contract language, courts must first look to the four corners of the document to determine whether an ambiguity exists.") There were five signatories to the Settlement Agreement. Four of the signatories were claimants against Balram's insurance policy, and the other was Balram's insurance carrier. Moreover, the Settlement Agreement states only that "the following plaintiffs met in Columbus, Ohio on 2-20-15 and agreed to settlements as follows . . ." (Doc. 13-1 at 5.) The Settlement Agreement does not contain any statement describing the "settlements" or the specific claims resolved.

Balram argues that its insurance carrier, Great West, acted as Balram's agent at the mediation and signed the Settlement Agreement on Balram's behalf. (Doc. 15 at 1-2.) Ohio courts define agency as "a consensual fiduciary relationship between two persons where the agent

7

has the power to bind the principal by his actions, and the principal has the right to control the actions of the agent." *Evans v. Ohio State Univ.*, 112 Ohio App. 3d 724, 744 (1996) *(*quoting, *Funk v. Hancock*, 26 Ohio App.3d 107, 110 (1985), citing *Haluka v. Baker*, 66 Ohio App. 308, 312 (1941)). "It is a principle of agency law that an agent, acting within the scope of his actual authority, expressly or impliedly conferred, can bind the principal." *Damon's Missouri, Inc. v. Davis*, 63 Ohio St. 3d 605, 608 (1992)(quoting, *Saunders v. Allstate Ins. Co.*, 168 Ohio St. 55, 58–59 (1958)). To establish apparent agency authority, the party must show:

> (1) [t]hat the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St. 3d 570, 576 (1991)(quoting, *Logsdon v. ABCO Constr. Co.,* 103 Ohio App. 233, 241–242 (1956)).

Balram argues that Great West had actual authority to act as Balram's agent because "nearly all mediations operate with an insurance representative present and negotiating on behalf of its insured regarding the claim(s) against it." (*Id.*) Balram does not cite any evidence to support this assertion. Moreover, even accepting that "nearly all mediations" occur with an insurance representative negotiating on behalf of its insured, it does not follow that the insurance representative necessarily would be authorized to negotiate its client's liability beyond the limits of the insurance carrier's policy.

Alternatively, Balram argues that Great West had apparent authority because it was clear to all present at the mediation that Great West was negotiating the claims on behalf of Balram. (*Id*. at 3.) This is the case, according to Balram, because Ohio does not permit claimants to bring suits against insurers without an unpaid judgment against a tortfeasor; therefore, the claimants at the

8

mediation must have known Great West was acting as Balram's agent. (*Id.* citing *Zidel v. Allstate Ins. Co.*, 2016-Ohio-1456, ¶ 7 ("R.C. 3929.06(B) precludes a person from bringing a civil action against the tortfeasor's insurer until the person has first obtained a judgment for damages against the insured and the insurer has not paid the judgment within 30 days.").) The fact that Ohio law prohibits such suits against insurers, however, does not prohibit insurers from voluntarily negotiating their potential liability at a mediation in advance of any judgment against their policyholder. Balram has not presented any other evidence that Great West was present in any capacity other than resolving the claims made against its insurance policy.

Of course, Central Transport disputes the assertion that everyone at the mediation understood that Great West was representing Balram. Central Transport argues that it required Balram to produce audited financials as a condition of its settlement with Great West because it wanted to know whether it would be able to pursue Balram for the rest of its claimed damages. Central Transport's explanation of the purpose of the mediation and the Settlement Agreement's terms is plausible. This creates a genuine issue of fact precluding summary judgment in Balram's favor.

**C. Central Transport's Motion for Discovery under Rule 56(d)**

As the Court is denying Balram's Motion for Summary Judgment, Central Transport's motion for leave to conduct additional discovery is denied as moot.

9

### III. CONCLUSION

Balram's Motion for Summary Judgment (Doc. 13) is **DENIED**, and Central Transport's motion for discovery under Fed. R. Civ. P. 56(d) is **DENIED** as moot.[1]

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, June 1, 2016.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[1] Central Transport's motion for discovery is contained in its Opposition (Doc. 14) to Balram's Motion for Summary Judgment.

10